# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION<br><br>This Document Relates only to Defendant: THE NEIMAN MARCUS GROUP, LLC | CASE No.: 2:24-MD-3126-BMM |

### ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

**THIS CAUSE** comes before the Court on Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards (Doc. 544),[1] filed on September 8, 2025, requesting entry of an order: (1) granting Final Approval to the Settlement; (2) certifying the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) reappointing the Plaintiffs as Class Representatives; (4) reappointing Devlan Geddes, Raph Graybill, John Heenan, and Jason Rathod as Class Counsel

---

[1] All capitalized terms used herein have the same meanings as those defined in Section II of the Settlement Agreement attached to the Motion for Final Approval as *Exhibit A*.

for the Settlement Class; (5) awarding Service Awards to the Class Representatives; (6) awarding attorneys' fees and costs to Class Counsel; (7) affirming the appointment of Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator and approving the payment of the remainder of the Settlement Administration Costs; (8) overruling timely and properly submitted objections, if any; and (9) entering final judgment dismissing the Action with prejudice as to the Defendant and reserving jurisdiction over Settlement implementation.

The Court held a hearing on the Motion for Final Approval on October 23, 2025. Having already analyzed the Settlement in entering the Preliminary Approval Order (Doc. 437), and having again carefully reviewed the Motion for Final Approval, the proposed Settlement and its exhibits, all relevant filings, the record, and the argument from the Parties' counsel at the Final Approval Hearing, the Court finds the Settlement Class should be finally certified, the Settlement satisfies the final approval criteria, and the Application for Attorneys' Fees, Costs and Service Awards should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

1. Defendant operates luxury retail clothing and accessories through brick and mortar and online stores throughout the country. As a function of operating its business, Defendant collects and maintains from its customers a limited amount of information pertaining to its customers and employees.

2. In or about May 2024, Defendant discovered that unauthorized individuals accessed its cloud data vendor's (Snowflake, Inc.) computer network and downloaded the information of millions of Defendant's customers and employees. That information, defined as Personal Information in this Action, includes some combination of names, email addresses, telephone numbers, and expired gift card information, with a much smaller minority having dates of birth and the last four digits of Social Security numbers. *Id.*

3. Thereafter, pursuant to certain states' laws requiring the dissemination of notice to those individuals whose driver's licenses were exposed, Defendant began sending out notice letters to those 64,472 affected persons. The remainder of the impacted individuals did not receive notice of the Data Incident because of the type of information disclosed and/or because the states they resided did not require notification.

4. Commencing in August 2024, Defendant was named in the first of four class action lawsuits. The Related Actions, filed in the Southern District of Florida, District of Delaware, District of New Jersey, and the District of Montana, were materially and substantively identical, had overlapping claims, sought to represent the same putative class members, and arose from the Data Incident.

5. Following the filing of the complaints against Defendant, counsel for Plaintiff Pelosi consulted with multiple data experts to understand how the breach

occurred, the type of information involved, and whether the information was published on the dark web or elsewhere. Counsel prepared written discovery, including interrogatories and requests for production, drafted a comprehensive Rule 30(b)(6) notice of deposition topics, and began preparing an ESI protocol and a protective order.

6. In late August 2024, Plaintiff Pelosi's counsel and Defendant began discussing settlement, in conjunction with which she propounded informal discovery requests on Defendant to learn as much as possible about liability, the types of data at issue, the size of the breach, damages, and other settlement-related issues. *Id*.

7. On October 4, 2024, the Judicial Panel for Multidistrict Litigation ordered the transfer and centralization of all Snowflake-related actions, including the Related Actions, to this Court. Following transfer, the Parties continued to negotiate the terms of the Settlement, ultimately agreeing to the material terms on February 1, 2025.

8. On February 3, 2025, the Parties filed a Notice of Settlement and Joint Motion to Stay All Deadlines Pending Final Approval of the Settlement, notifying the Court that all Parties were able to resolve the cases against Defendant. (Doc. 318.) The Court granted the motion on February 3, 2025. (Doc. 319.)

9. Over the next several weeks, the Parties continued to negotiate at arm's-length over the Settlement's terms. They also exchanged confirmatory discovery,

4

interviewed potential administrators, and negotiated the Notice Program and Claims Process. The Parties signed the Agreement on May 1, 2025.

10. On May 2, 2025, Plaintiffs in the Related Actions filed a Consolidated Complaint. (Doc. 408.) On May 9, 2025, Plaintiffs filed their Motion for Preliminary Approval, which the Court granted on May 22, 2025. (Docs. 413, 435.) The Court amended the Preliminary Approval Order on May 22, 2025, as to the date of the Final Approval Hearing only. (Doc. 437.) The Court entered its Preliminary Approval Order, which, *inter alia* (1) preliminarily approved the Settlement; (2) determined that, for purposes of the Settlement only, the Action should proceed as a class action and certified the Settlement Class; (3) appointed Plaintiffs as Class Representatives; (4) appointed Class Counsel; (5) appointed Epiq as Settlement Administrator; (6) approved the form and manner of Notice and the Notice Program; (7) approved the Claim Process and Claim Form; and (8) set the Final Approval Hearing date.

11. Following Preliminary Approval, as confirmed in declarations by Class Counsel and the Settlement Administrator filed in support of the Motion for Final Approval, the Parties and the Settlement Administrator commenced and completed the Notice Program. Notice was provided to the Settlement Class in accordance with the Court's Preliminary Approval Order by direct Email Notice and Publication Notice, and the Long Form Notice was available to Settlement Class Members on

the Settlement Website or on request to the Settlement Administrator. The Settlement Class was given the opportunity to opt-out or object to the Settlement and to file Claims. The Claims Process is ongoing, and the deadline to file Claims was October 8, 2025.

## JURISDICTION OVER PARTIES AND SETTLEMENT CLASS MEMBERS AND NOTICE OF PROPOSED SETTLEMENT

12. The Court has subject matter jurisdiction over the Action and personal jurisdiction over the Parties and all Settlement Class Members.

13. Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, notice was duly provided to the Attorneys General of all states, the District of Columbia, and the United States Territories.

14. Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator has complied with the approved Notice Program as confirmed in its declaration filed with the Court. The form and method for notifying the Settlement Class of the Settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances. The Court finds that the Notice Program was clearly designed to advise the Settlement Class members of their rights. Further, the Court finds that the Claims Process set forth in the Agreement was followed, and that the process was the best practicable procedure under the circumstances.

## FINAL CERTIFICATION OF SETTLEMENT CLASS

15. In the Preliminary Approval Order, the Court certified the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). (Doc. 437.) No circumstances have arisen that justify altering the Settlement Class. Accordingly, final certification of the following Settlement Class is warranted, for settlement purposes:

> [A]ll persons in the United States whose Personal Information was potentially compromised as a result of the Data Incident.

Agreement ¶ 62. Excluded from the Settlement Class are: (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement. *Id.*

16. Based upon information provided, the Settlement Class is ascertainable and satisfies numerosity; there are common questions of law and fact, including whether Defendant's Data Incident potentially compromised Plaintiffs' and Settlement Class Members' Personal Information, satisfying commonality; the proposed Class Representatives' claims are typical, in that they are members of the Settlement Class, thereby alleging they have damaged by the same conduct as other Settlement Class Members; the proposed Class Representatives and Class Counsel have fully, fairly and adequately protected the interests of the Settlement Class and will continue to do so; questions of law and fact common to members of the Settlement Class predominate over questions affecting only individual members for

7

settlement purposes; and a nationwide class for settlement purposes is superior to other available methods for the fair and efficient adjudication of this controversy. Fed. R. Civ. P. 23(a), (b)(3).

17. The appointments of the Class Representatives, Class Counsel, and the Settlement Administrator are affirmed.

## FINAL APPROVAL OF SETTLEMENT

18. The Court does hereby finally approve the Settlement as being fair, reasonable, and adequate as to the Settlement Class Members. In making this ruling, the Court considered the Fed. R. Civ. P. 23(e)(2) factors in conjunction with the Ninth Circuit's traditional factors set forth in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

19. The Settlement was negotiated through good faith, informed, and arm's-length negotiations by class action attorneys familiar with the legal and factual issues at stake. Given the complexity of data breach litigation and with the risks outlined in the Motion for Final Approval, the Settlement provides substantial benefits to all Settlement Class Members and prospective relief by Defendant's business practice changes, which would be unavailable if Plaintiffs ultimately lost or were only partially successful. The Settlement Agreement avoids further delay and expense in obtaining recovery.

20. Class Counsel state that, in their view, the Settlement Agreement

represents an outstanding result. The reaction of the Settlement Class to the Settlement has been very favorable with tens of thousands of Claims having been submitted. Importantly, only one Settlement Class Member, Bruce Isacson, purported to object to the Settlement. The Court finds his objection fails to comply with the procedural requirements stated in the Preliminary Approval Order and is, therefore, waived. The Court nonetheless considered the objection and Plaintiffs' response thereto. The objection does not raise legitimate concerns about the fairness, reasonableness, or adequacy of the Settlement or the attorneys' fees and costs requested by Class Counsel. Consequently, the Court finds that the objection is not meritorious and therefore overruled.

21. The Settlement treats all Settlement Class Members equitably because they may all claim Settlement Class Member Benefits, and distribution plan for those benefits is fair, reasonable, and adequate.

## ATTORNEYS' FEES AND COSTS

22. The Court finds that Class Counsel and Plaintiffs' counsel achieved an fair and adequate result for the Settlement Class. The Court finds that this Action required significant outlays of time and resources for Class Counsel and Plaintiffs' counsel and was litigated zealously by both Parties. The Court also finds that data breach litigation is ever evolving and complex and, therefore, presented substantial risks to Plaintiffs and their counsel to succeed.

23. The Court finds that the Settlement Class Members faced a significant risk of no recovery, much of the cost of which would have been borne by Class Counsel and Plaintiffs' counsel such that they took on significant financial risk on behalf of the Settlement Class Members.

24. This Court finds the business practice changes Defendant has taken to further secure the Personal Information also provide value to the Settlement Class. Though that value is not specifically quantifiable so as to be included in the Rule 23(b)(3) Settlement Fund for purposes of calculating the attorneys' fee award, the Court finds that it "nonetheless [is] a substantial benefit with real economic and noneconomic value which justifies the requested fee percentage." *Anderson v. Boyne USA, Inc.*, No. 2:21-cv-00095-BMM, 2025 WL 1755223, at *3 (D. Mont. June 25, 2025) (citing *Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003)).

25. Thus, Class Counsel is awarded one-third of the Settlement Fund or $1,166,666.66 for attorneys' fees under the percentage of the recovery method. This Court considered alternative measures for attorneys' fees, including the lodestar method, and finds the percentage of recovery method to be to be appropriate, particularly given that the total amount of the Settlement is a fixed amount without any reversionary payment to Defendant. *Id.* at 3. The Court evaluated the attorneys' fee award under Fed. R. Civ. P. 23(h) and considering the following factors set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002): (a) the

results achieved; (b) the risk of the litigation; (c) the skill required; (d) the quality of the work performed; (e) the contingent nature of the fee and the financial burden; and (f) awards made in similar cases. The Court concludes awarding one-third of the Settlement Fund is fair and within the range of reason.

26. The Court also awards $60,586.47 for reasonable litigation costs necessarily incurred in the Action.

27. The attorneys' fees and costs shall be paid from the Settlement Fund in accordance with the Agreement.

### SERVICE AWARDS

28. The Court finds that Service Awards of $3,000.00 each for the Class Representatives is fair and reasonable in light of, inter alia: (i) the time and effort of the Class Representatives to the Action; (ii) the significant financial and reputational risks faced by the Class Representatives through their initiation and participation in the Action, including their exposure to a significant costs order; (iii) the amount of the Service Awards when compared to the Settlement benefits Settlement Class Members who made Valid Claims will receive when compared to the Settlement Fund and Net Settlement Fund; and (iv) the adequate result achieved for the Settlement Class. The Service Awards shall be paid from the Settlement Fund in accordance with the Agreement.

**SETTLEMENT IMPLEMENTATION**

29. Because the Court grants Final Approval of the Settlement set forth in the Agreement as fair, reasonable, and adequate, the Court authorizes and directs implementation of all terms and provisions of the Settlement.

30. All Parties to this Action, including all Settlement Class Members, are bound by the Settlement as set forth in the Agreement and this Final Approval Order.

31. A list of the individuals who have opted-out of the Settlement is attached hereto as ***Exhibit A***. Those individuals will not be bound by the Agreement or the Releases contained therein.

32. As of the Effective Date, and in exchange for the relief described in the Agreement, the Releasing Parties shall release the Released Parties from the Released Claims.

33. Based on the information presented to the Court, the Claims Process has proceeded as ordered and was consistent with the Agreement and Preliminary Approval Order. All Settlement Class Members who submitted Valid Claims shall receive their Settlement Class Member Benefits pursuant to the Settlement's terms. All Settlement Class Members who did not submit a Claim, or for whom the Claim is determined to be invalid, shall still be bound by the terms of the Settlement and Releases therein.

34. In the event there are funds remaining in the Settlement Fund, including

from uncashed checks, 20 days following the 180-day check negotiation period, all remaining funds shall be distributed to the Montana Justice Foundation (wwww.mtjustice.org).

35. Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits.

36. Plaintiff and all Settlement Class Members and Releasing Parties, and persons purporting to act on their behalf, are permanently enjoined from commencing or prosecuting (either directly, representatively, or in any other capacity) any of the Released Claims against any of the Released Parties in any action or proceeding in any court, arbitration forum, or tribunal.

37. The Court hereby retains and reserves jurisdiction over (a) implementation of the Settlement and any distributions to the Settlement Class Members; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms of the Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

38. In the event the Effective Date of the Settlement does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Agreement, and this Final Approval Order and any other order entered by this Court in accordance with the terms of the Agreement shall be vacated,

*nunc pro tunc*. In such event, all orders entered, and releases delivered in connection with the Settlement shall be null and void and have no further force and effect, shall not be used or referred to for any purpose whatsoever, and shall not be admissible or discoverable in any proceeding. The Action shall return to its status immediately prior to execution of the Agreement.

39. There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to the Fed. R. Civ. P. 58.

Accordingly**, IT IS HEREBY ORDERED** that Plaintiffs Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Services Awards (Doc. 544) is **GRANTED**.

DATED this 23rd day of October 2025

_____
Brian Morris, Chief District Judge
United States District Court

# EXHIBIT A - Opt-Out List

1. Ryan Balandran
2. Paisen Lin
3. John Dustin Mccullough Jr
4. Cynthia Cassidy
5. Daniela Zapico
6. Robert Kesenci
7. Barbara Jordan
8. Christine Mcmahon
9. Laura Barr
10. Taylor Hill
11. Anne Consolacion
12. Jane Pittman
13. Marsha Bukowski
14. Sam Fulton
15. Siylvia Bass
16. Jonathan Sato
17. Jessica Stechschulte
18. Ricardo Sanguino Ortiz
19. Tanya Tankou
20. Jonathan Berg
21. Denny Kim
22. Sara Takieddine
23. Fuhe Guan
24. Owen Lareaux
25. Louise Cheung
26. Julia Lipe
27. Brittany Burns
28. Brian Ferguson
29. Marisa Urteaga Watkins
30. Matthew Smith
31. Joseph Sides
32. Grace Herrin
33. Gail Padrick
34. Brent Stackhouse
35. Lindsay Mcguire
36. Adis Cajic
37. Therese Mendenhall
38. Michael Lin
39. Maureen Sullivan
40. Emily Taxis
41. Pervis Ballew Jr
42. Alexis Bowman
43. Kathleen Tice
44. Poonam Subbaiah
45. Tracy Lynn Weiss
46. Nataliya Artemieva
47. Gail Reeves
48. Hao Wang
49. Wang Haozhe
50. Erica Mcginn
51. Virginia Keller